BRANCH v. WAFFORD et al. (No. 10524.)

(Court of Civil Appeals of Texas. · Fort Worth. June 23, 1923. Rehearing Denied Nov. 10, 1923.)

1. **Judgment ⬤⟾199(1)—On submission on special issues, court cannot render judgment n. o. v.**

In view of Rev. St. art. 1990, where a case is submitted to the jury on special issues, the court cannot render judgment n. o. v.; the limitation of its power being to set the verdict aside and grant new trial.

2. **Frauds, statute of ⬤⟾131(1)—Parol agreement to modify written lease, if based on consideration, held admissible.**

In landlord's action for rent of land leased for more than one year, where tenant offered parol proof of modification of lease, if consideration existed for the alleged parol contract, and such contract tended to modify the original lease or if the facts showed an estoppel, the parol agreement may be sustained.

**On Motion for Rehearing.**

3. **Appeal and error ⬤⟾1175(5) — Appellate court on reversal will not render judgment on testimony of interested witness.**

Where proof that original lease was canceled and another and oral contract made depended on tenant's testimony, in landlord's action for rent, such testimony of an interested witness could be disregarded by the jury, and, where the appellate court reversed judgment for landlord, it cannot render judgment.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by Mrs. Lily Wafford, administratrix of the estate of Jack Wafford, deceased, and others, against E. S. Branch. Judgment for plaintiffs n. o. v., and defendant appeals. Reversed and remanded.

Crate Dalton, of Breckenridge, for appellant.

Leaverton & Hardy, of Breckenridge, for appellees.

BUCK, J. This suit was brought in the district court of Stephens county by Mrs. Lily Wafford, administratrix of the estate of Jack Wafford, deceased, Oscar B. Kelly, and R. N. Miller, against E. S. Branch. The plaintiffs below owned a lot on the corner of Breckenbridge and Dyer streets in Breckenridge, the title to which was subsequent to Branch's lease thereof. The lease of Branch was for a part of a larger tract, leased by J. B. and K. Stoker for five years, beginning with the 10th day of March, 1920, and ending with the 10th day of March, 1925. V. E. Steen and B. C. Burch were the original lessees.

On July 13, 1920, Steen and Burch leased to Branch a portion of said lot for a term of 4 years, 7 months and 27 days, from and after the 12th day of July, 1920, and Branch agreed to pay $125 a month rental; said rental being paid on the 13th day of each and every month during the life of the contract. Subsequent to the assignment by Steen and Burch to Branch of the lease in question, Steen and Burch assigned the lease to Jack Wafford. On May 14, 1921, the Stokers sold by warranty deed the entire tract to Mrs. Lily Wafford, R. M. Miller, and Oscar B. Kelly, Mrs. Lily Wafford receiving $65/170$, Miller $59/170$, and Kelly $46/170$. On December 25, 1920, Jack Wafford died, and his wife, Mrs. Lily Wafford, qualified as administratrix of his estate.

It was alleged in the petition that Branch had defaulted in the payment of the rental, and that there was then due and unpaid rents for the period from November 13, 1921, to the date of the suit, which was October 7, 1922. Plaintiffs prayed for a foreclosure of the lease and for a foreclosure on all the improvements situated thereon. In the alternative, they prayed, in case it should be determined that they were not entitled to foreclosure of the lease and all improvements situated thereon, that they have judgment for $1,500 past-due rents, together with a lien upon any and all of the goods, furniture, chattels, buildings, and other property situated on said lease.

The defendant answered by way of general demurrer, a general denial, and specially pleaded that by mutual consent, on or about August 13, 1921, defendant and plaintiffs, acting through Jack Wafford, one of the plaintiffs' and agent of the others, agreed that, owing to the uncertainty of conditions existing in Breckenridge, a lease from month to month was the only lease possible to make at that time, fair and just to all parties, and that it was agreed that the rent on the premises described was worth about $75 a month at that time and no more, and they agreed that so long as conditions remained as they were at that time that the ground rent should remain $75 a month from month to month. Defendant alleged that he paid plaintiffs $75 a month until about October 13, 1921; that on said later date plaintiffs and defendant agreed that conditions had grown worse in Breckenridge, and that the reasonable rental value of the land was $50 a month, and that

ho paid said agreed rental to January 13, 1922; that subsequent to December 13, 1921, and before January 13, 1922, Jack Wafford died, and that his wife was appointed administratrix of the estate, and that she refused to accept the sum of $50 a month as the agreed rental. Defendant further alleged that the ground rent was not, at the time of the filing of this suit, worth $50 a month, but that defendant was ready at that time, and had been ready since January 13, 1922, to pay said amount, and that he now tendered to plaintiffs all back due rentals at $50 · a month. He further alleged that the ground rent of the premises was not worth more than $25 a month, and prayed that beginning with October 13, 1922, the answer having been filed October 7, 1922, he be decreed a further reduction of $25 a month.

[1] The cause was tried on special issues, in answer to which the jury found: (1) That the reasonable ground rent on the property in question from January 13, 1922, up to the time of the trial was $40 per month. (2) That the reasonable rent on the ground and improvements from May 10, 1922, up to the time of the trial was $80 a month. (3) That Jack Wafford had authority to act for plaintiffs Miller and Kelly in all transactions entered into by and between him and the defendant Branch.

The trial court evidently concluded that under the law the court could not consider the alleged parol modification of the written rental contract, and that the answers of the jury to the special issues submitted were immaterial. At any rate, the court rendered judgment October 24, 1922, the trial having been had on October 9th, for plaintiffs against defendant for $1,004.50, with interest, and awarded plaintiff a cancellation and forfeiture of defendant's lease, and decreed a foreclosure in favor of plaintiffs and against defendant on the improvements situated on said lot. From this judgment the defendant has appealed.

Article 1990, Rev. Statutes, provides:

"In all cases where a special verdict of the jury is rendered, or the conclusions of fact found by the judge are separately stated, the court shall, unless the same be set aside and a new trial granted, render judgment thereon."

This article of the statute has been construed many times by our Supreme Court and the various Courts of Civil Appeals. So far as we have been able to discover, the universal holding has been, having submitted the case to the jury on special issues, that the court is without authority to render a judgment non obstante veredicto. The limitation of the court's power under such circumstances is to set aside the verdict and grant a new trial. Heimer v. Yates (Tex. Com. App.) 210 S. W. 680; H. & T. C. Ry. v. Strycharski, 92 Tex. 1, 37 S. W. 415; Henne & Meyer v. Moultrie, 97 Tex. 216,

77 S. W. 607; Essex v. Mitchell (Tex. Civ. App.) 183 S. W. 399, writ denied; T. P. Ry. v. Jones (Tex. Civ. App.) 196 S. W. 357, writ denied. Therefore we conclude that the trial court erred in rendering judgment for plaintiffs, inasmuch as the verdict of the jury of the issues submitted was favorable to defendant.

[2] In reversing this judgment; we will say a few words with reference to the other questions presented upon the abrogation of the written contract, coming within the statute of frauds, by a subsequently executed parol agreement between the parties thereto. In Graham v. Kesseler (Tex. Civ. App.) 192 S. W. 299, 303, by this court, it is said:

"The statute of frauds does not render a contract. thereunder absolutely void, but voidable only. It was enacted for the benefit of defendants. Crutchfield v. Donathon, 49 Tex. 691, 30 Am. Rep. 112. The classes of contracts coming within the statute of frauds may be successfully resisted, when the statutory requirements are not observed, if the defendant invokes the statute. Such contracts are not per se void or illegal, but the statute only prohibits the enforcement of them by an action. Robb v. Railway Co., 82 Tex. 392, · 18 S. W. 707; Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893, writ of error denied in 101 Tex. 629, 89 S. W. xvi; Brown v. Randolph, 26 Tex. Civ. App. 66, 62 S. W. 981."

So far as the transcript shows, the plaintiff did not plead the statute of frauds, nor does it appear that he objected to the testimony offered of an oral modification of a contract required under the statutes to be in writing. The evidence offered of such parol modification is, so far as the record discloses, without objection. Some of us think, under the present state of the record, that the trial court would have been justified in entering judgment for defendant, irrespective of other questions involved.

Appellant urged, in the court below, and urges here, that the written contract for the lease of the land for a period longer than a year may be abrogated by a subsequent parol agreement between the parties. But the question arises, Does an agreement to accept a less amount than the whole upon a liquidated demand, without the presence of any independent consideration therefor, constitute an enforceable executed agreement? It has been universally held, from an early date, that, as regards liquidated demands, · a mere payment of a lesser sum on the day fixed by the contract, or after default, cannot be a satisfaction for the whole, though it was agreed that such payment should satisfy the whole, because· of a want of consideration for the discharge of the whole. As said in 1 R. C. L. § 15, p. 184:

"This question has arisen in the courts in almost numberless instances and has received the same solution, notwithstanding the courts, while so ruling, have rarely failed, on the re-

currence of the question, to criticize and condemn its reasonableness, justice, fairness, or honesty. This doctrine, while generally followed, has not passed unchallenged, and has been repudiated in some jurisdictions, on the practical ground that the receipt by a creditor of cash in hand, though less than the amount due him, is a real benefit, when the fact that he might be put to vexation, cost and delay, or the hazards of litigation in an effort to collect all, is taken into consideration. It should be borne in mind that the rule is not a statute, or even a rule of property. Its validity depends upon its consonance with reason. While the nearly universal acceptance of it may commend it to the court with almost irresistible force, still it is open for examination as to whether it was originally sound, and whether the weight of the authority upholding it is not diminished or totally overthrown by the exceptions without which the rule cannot logically stand. For it is observable that the number of cases in which the rule has been applied and judgment rendered for the plaintiff, despite the agreement to discharge, is small in comparison with those in which the courts have been able to discover some circumstances, however trifling, which could be construed as a technical legal consideration."

In Conlan v. Spokane Hardware Co., 117 Wash. 378, 201 Pac. 26, we have a parallel case to the one at bar. Conlan's executrix brought suit for back rents after the death of Conlan. The lease contract was for 10 years and in writing, at a monthly rental of $1,000 per month, payable in advance. The rents were reduced and the payments were made by check, on the margin of which was indorsed, "Rent in full to date." An abrogation of the old contract and the making of a new verbal contract was alleged by the defendant, as in this case. The statute of frauds was pleaded by Conlan, and an objection was made to the testimony of the alleged parol agreement. The court said:

"The objection that the agreement to reduce the rental was void for want of consideration is also without foundation. When a tenant refuses for any cause to pay rentals according to the terms of the contract of lease, the landlord has an option as to the course he will pursue. He may stand on the contract and take the remedies the law applicable to the contract affords him, or he may treat the contract as abrogated and enter into new contract with the tenant. If he does the latter, the mutual promises made by the one to the other furnish the consideration for the agreement. It may be that, in this instance, since the contract of reduction was oral and since the term extended for a longer period than one year, either party could have repudiated its further operation so long as it was executory. But after it became an executed contract by performance, neither party could repudiate it so as to thereby acquire additional rights under it."

See, also, Roberts v. Mill, 56 Cal. App. 556, 205 Pac. 872; Ford v. Miller, 149 Ark. 443, 232 S. W. 604; Thompson v. Western Casket Co., 219 Ill. App. 184; Commissioners of Lewis v. Water Fisheries Co. (Del. Ch.) 117 Atl. 823.

In McDonald v. Whaley (Tex. Com. App.) 244 S. W. 596, it is said:

"Though the parol contract of rescission be within the statute, yet, if the defendant in error, in reliance thereon, has so far acted upon it that a failure to complete it according to its terms would work irreparable injury to him, equity will regard the case as removed from the influence of the statute, and grant the relief. 27 C. J. 337–343, pars. 425–427; Phelps v. Seeley et al., 22 Grat. (Va.) 573. * * * Whatever may be said with reference to this conflict of decisions, it is settled in this state by the decision of Dial v. Crain, 10 Tex. 444, and the cases reaffirming it, that an agreement for the rescission of an executory contract for the sale of land is within the statute of frauds, and parol evidence of such rescission is inadmissible. Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 610; Gardner v. Sittig (Tex. Civ. App.) 188 S. W. 731; Id. (Tex. Com. App.) 222 S. W. 1090."

In the last-cited case, the court held that the oral contract of rescission was so far acted upon by the parties that it would be inequitable and unjust to hold the defendant in error bound by the original contract, and that the right to recover should not be defeated by urging the invalidity of the parol contract on the ground that a contract in writing existed, where both parties had by mutual consent abandoned the written contract. See Lovelady v. Harding, 207 S. W. 933, by this court; Weeks v. Stephens (Tex. Civ. App.) 155 S. W. 667; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Old River Rice Irr. Co. v. Stubbs (Tex. Civ. App.) 137 S. W. 154. In Henry v. Phillips, it was held that it is competent to show that a written contract entered into with the solemnity required by law has been abandoned by the parties. In Black on Rescission and Cancellation, p. 1236, § 524, it is said:

"Though a contract may be in writing, and even under seal, it may be rescinded or abrogated by the mutual consent of all the parties to it, by a mere parol agreement, or at least this rule can certainly be applied in cases where the parol agreement for rescission has been executed or has been so far acted on that it would be inequitable to hold the parties bound by their original contract. * * * And notwithstanding some hesitation and difference of opinion, it is now settled by the consensus of the authorities that a contract for the purchase and sale of real estate has nothing to distinguish it from other contracts in this respect, but may be undone or abrogated by the mere verbal agreement of the parties, provided there is a distinct and independent agreement to that effect, and it has been at least partially acted on."

But, irrespective of any conflict of authorities, we think that, if any consideration existed for the alleged parol contract, and such

contract was made tending to modify the original written contract, or if the facts show any elements of estoppel, which, of course, would have to be pleaded, the parol agreement to the modification may be sustained.

For the reasons stated, the judgment of the court below is hereby reversed, and the cause remanded.

### On Motion for Rehearing.

[3] Appellant urges that we should reverse and render the judgment instead of reversing and remanding, that judgment should be rendered for plaintiffs for such sum of rents, not to exceed $450, tendered in court by defendant's pleadings, and a further judgment holding that the original contract of lease was canceled by consent of all parties, and an oral agreement made for a month to month rental. We cannot do this under the facts, as the proof that the original contract was canceled and another and oral rental contract was made depends almost entirely on the testimony of defendant himself. With the testimony coming from an interested source, the jury had the right to disregard it. West Lumber Co. v. Goodrich et al. (Tex. Com. App.) 223 S. W. 183, 192, by Commission of Appeals, approved by the Supreme Court; Mitchum v. C. R. & G. Ry. Co., 107 Tex. 34, 173 S. W. 878; Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 971. Nor do we think that the statement in defendant's bill of exception duly approved by the trial court, that "because it is based upon the assumption that there was no intention on the part of plaintiffs and defendant to make a new contract prior to the death of Jack Wafford, which should have been submitted as a special issue to the jury had not the court found that there was no evidence to the contrary," should be taken as a statement by the court that he had found from the facts that the plaintiffs and defendant had agreed to cancel the written contract and had substituted therefor the oral contract.

We conclude that the original opinion correctly disposes of the issues presented, and appellant's motion for rehearing and also appellees' motion for rehearing are accordingly overruled.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes