## THE STATE, EX REL BOYD VS. HASTINGS.

A certificate of the attendance of a member of the legislature, which states that the member "is entitled to per diem for sixteen days," does not state facts, but a conclusion, and is not a sufficient certificate under sec. 12, chapt. 9, R. S.

The words "each day's attendance," in sec. 21, art. 4, of the constitution, relating to compensation of members of the legislature, means an attendance for the purpose of discharging legislative duties as such duties are usually performed, and though there may be a temporary cessation of legislative functions by the respective bodies, caused by a temporary adjournment over Sunday or a holiday, or to facilitate business and to enable committees to consider and mature bills and resolutions; yet for attendance during such adjournments, the members are entitled to their *per diem* compensation.

Where there is an adjournment for such a period of time as to afford a reasonable inference that it was not to facilitate the business of the session, but to operate as a cessation of it for a given period that the members may return to their homes, they cannot during such adjournment be said to be in attendance on their legislative duties, and are not entitled to the usual *per diem* compensation during such period.

MOTION *for a Peremptory Mandamus*, and all the material facts on which it was founded, are stated in the opinion of the court.

*J. H. Knowlton* for relator.

*The Attorney General* and *J. T. Mills* for respondent.

*By the Court,* DIXON, C. J. Mandamus to compel the respondent, as treasurer of the state, to pay to the relator the sum of forty dollars, which he claims to be due him as a *per diem* allowance for attendance as a member of the legislature. An alternative writ having been issued and served, the case now comes up on motion for a peremptory writ founded on an agreed statement of facts which may be stated as follows: The legislature of 1862, of which the relator was a member of the assembly, by joint resolution adopted on the 28th day of March, resolved that the two houses should adjourn on the 7th day of April, and take a recess until the 3d day of June, and that no member or officer of either house (except such members of joint committees as might be specially authorized to continue their labor during the recess) should receive, or be

entitled to any pay for or during such recess.    The legislature adjourned, and convened agreeably to the resolution.    The re-lator was not a member of any of the joint committees en-gaged during the recess.    At the adjourned session the assem-bly passed a resolution in these words, "Resolved, that the chief clerk and speaker be, and they are hereby authorized and directed to issue *per diem* certificates in favor of the members of this house, and for the officers thereof, who were not dis-charged by reason of the recess, for sixteen days attendance upon the present session of the legislature, from the 8th day of April, to the 23d day of April, A. D. 1862, inclusive, and said *per diem* shall be received as payment in full by the mem-bers of this house, for attendance during the recess from the 7th of April to 3d of June."    Certificates were accordingly issued, signed by the speaker, and attested by the chief clerk. That issued and delivered to the relator, reads as follows : " Hon. John Boyd, of the assembly, is entitled to *per diem* for sixteen days, from the 8th day of April, to the 23d day of April, 1862, inclusive, under Res. 24 A."    The certificate was presented to the respondent and payment refused.

It was also admitted that the relator was not in actual attend-ance or engaged in the discharge of his duties as member during the recess, though the relation avers that he " was ready and willing to do any business devolving upon him as such mem-ber."    The first objection taken is, that the certificate is irregu-lar, that it does not state facts, or set forth the number of days that the relator, in whose favor it was given has attended, as required by section twelve, chapter nine, of the Revised Stat-utes.    It is no doubt defective in this particular, but we pro-pose to go directly to the merits of the application and to con-sider whether the relator is entitled to any compensation under section 21, article 4, of the constitution.    "Each member of the legislature shall receive for his services, two dollars and fifty cents for each days attendance during the session, and ten cents for each mile he shall travel in going to and returning

from the place of meeting of the legislature, on the most usual route."

The relator's right to compensation claimed, obviously turns upon the meaning of the words "each days attendance" as used in this section. Upon this subject we cannot express our views more clearly than by adopting the language of the supreme court, of Alabama, in a case involving precisely the same question under the code of that state, *Ex parte, Pickett* 24 Ala., 95. The court say: "It could never have been intended that the members of the legislature should receive pay for those days only, on which they were actually engaged in the business of legislation, and neither the language employed nor the purposes of the statute would force such a construction upon us. A member may be engaged on the general assembly during periods of temporary cessations of legislative functions by the respective bodies; and the *per diem* compensation was intended as a remuneration for the services of the members as well as to provide for their expenses during the period they were required to be absent from their homes, in attending to the duties of legislation, as those duties are usually and ordinarily performed. And the object of limiting this compensation to each days attendance was, to secure on the part of the member, the performance of legislative duty during those days which the house to which he belonged, deemed necessary to devote to the business of legislation. It was never intended that the members of the legislature should not receive pay for Sundays or pending temporary adjournments upon holidays, or on occasions of the death of a member. The practical construction of the law, from the organization of the government to the present time has been otherwise, and we have no disposition to depart from it. These are not regarded as permanent cessations in the business of legislation, but in the nature of adjournments from day to day when in legal contemplation, the business is progressing. Indeed it may often happen that a temporary adjournment for a few days may tend to

facilitate the business, since the committees may thus be afforded time to consider of and mature the matter of bills and resolutions referred to them. But when, as in the case before us, there is an adjournment of near three weeks, for such a period of time as to afford a reasonable inference that it was designed not to facilitate the business of the session, but to operate as a cessation of it for a given period, that the members may return to their respective homes, it would appear absurd to say that a member was in attendance upon the general assembly, when it was not convened and could not be, until the period which it had fixed for re-assembling had arrived."

The motion must accordingly, be denied.